UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CANDIDA SCARBROUGH,

        Plaintiff,

v.                                                     Case No. 5:05-cv-43-Oc-10GRJ

JO ANNE BARNHART, Commissioner of
Social Security Administration,

        Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for a period of disability and disability insurance benefits and Supplemental Security Income. (Doc. 1.) The Commissioner has answered (Doc. 10) and both parties have filed briefs outlining their respective positions. (Docs. 14 & 18.) For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I. PROCEDURAL HISTORY

On September 30, 2001, Plaintiff filed an application for a period of disability and disability insurance benefits, and Supplemental Security Income, claiming a disability onset date of February 15, 2001. (R. 91-93, 332-34.) Plaintiff's application was denied initially (R. 55-56, 335-36), and upon reconsideration. (R. 58-62, 338-39.) Thereafter, Plaintiff timely pursued her administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 63.) The ALJ

conducted Plaintiff's administrative hearing on January 28, 2003. (R. 359-77.)  The ALJ issued a decision unfavorable to Plaintiff on February 27, 2003.  (R. 48-54).  Plaintiff timely filed a request for review with the Appeals Council (R. 76-84) and the Appeals Council remanded the case back to the ALJ for further proceedings.  (R. 85-88.)  After a supplemental hearing on June 18, 2004 (R. 378-400), the ALJ issued a decision unfavorable to Plaintiff on August 23, 2004 (R. 15-23.)  Plaintiff timely filed a request for review with the Appeals Council.  (R. 340-58.)  The Appeals Council denied Plaintiff's request for review on November 9, 2004 (R. 8-11.)  On January 10, 2005, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when

---

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). *See Also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE RECORD EVIDENCE

Plaintiff was born on May 18, 1972 and was thirty-two (32) years old at the time of the supplemental hearing. (R. 16, 381.) Plaintiff has a high school education and completed two years of college. (R. 377.) She has worked as a phlebotomist, certified nurse assistant, cashier, receptionist and waitress. (R.108, 127, 387-88.) Plaintiff contends that she has been unable to work since February 15, 2001 due to systemic

---

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

lupus erythematosus, hypertension, arthritis, irritable bowel syndrome, asthma, diarrhea and depression.  (R. 107, )

From August 3 2001 through January 3, 3003, Plaintiff was treated by Victoria L. Torralba, M.D.  for systemic lupus erythematosus ("SLE").[22]  (R. 271-300, 319-20.)  Over this time, Plaintiff complained of *inter alia* joint pain, skin rash and fatigue. (R. 286-87.) On July 6, 2001, Plaintiff was seen by M.P. Kumar, M.D. for complaints of fatigue and stiffness.  (R. 267-68.)

The medical records show that claimant has also complained of intermittent left flank pain. (R. 216.)  A renal ultrasound revealed a peripheral calcification in the left kidney.  (*Id.*)  On July 30, 2001, Plaintiff saw Thomas A. Stringer, M.D. and on examination Dr. Stringer noted palpable mild to moderate left CVA tenderness and persistent microscopic hematuria.[23]  (R. 216-19.)

On September 7, 2001, Plaintiff saw Padma V. Reddy, M.D. for evaluation of an abnormal urinalysis.  (R. 223-25.)  Dr. Reddy noted that Plaintiff had recently been diagnosed with SLE. (R. 274.)   On October 23, 2001, Plaintiff saw Dr. Reddy again. (R. 220.) Plaintiff reported feeling fairly well and reported that a recent episode of renal colic had resolved spontaneously.   (*Id.*)  Plaintiff denied any genitourinary complaints,

---

[22] Also known as "SLE", this is a serious, often fatal, disease accompanied by various lesions in the organs, skin eruptions, fever, and other symptoms.  Pathologically it is characterized by abnormal changes in the connective tissues, especially of the small arteries.  The organs and tissues primarily involved are the kidneys, the spleen, and the endocardium (the inner lining of the heart).  The outstanding clinical signs include weakness, fatigability, arthritis resembling rheumatoid arthritis, redness of the skin in patches, pericarditis, pleurisy, swelling of the lymph nodes, anemia, etc.  See 3-L Attorneys' Dictionary of Medicine 4298.

[23] Hematuria refers to the presence of blood in the urine.  See 1-B Attorneys' Dictionary of Medicine 2830.

urinary symptoms or any flare-ups of lupus. (*Id.*) Dr. Reddy diagnosed Plaintiff with chronic renal insufficiency. (*Id.*)

On January 4, 2002, David R. Miller, D.O performed an Office of Disability Initial Consultation. (R. 228-31.) Plaintiff's chief complaints were pain and fatigue. (R. 228.) Based on her history and physical examination, Dr. Miller's impression was SLE, hypertension, tachycardia, hypothyroidism, asthma, interstitial nephritis, nephrolithiasis,[24] chronic renal insufficiency, anemia, obesity, and chronic pain and fatigue. (R. 229.)

On October 13, 2003, at the request of the State agency, Plaintiff underwent a consultative psychological evaluation with Steven L. Weiss, Ph.D. (R. 309-13.) Plaintiff reported that she has had minor episodes of depression since 1988 but that it had worsened considerably since 1998 as her physical problems mounted. (R. 310.) Plaintiff reported that she rarely leaves her bedroom because of pain and her depressed condition. (Id.) She also noted that she has low energy, is frequently tearful and irritable and feels apathetic and hopeless. (Id.) Plaintiff reported increasing difficulties with memory and concentration and fleeting suicidal ideation without intent. (Id.) Plaintiff stated that she was angry and sad because "I feel like I've lost my life." (Id.)

Dr. Weiss administered the MMPI, and the results suggested an exaggeration of symptoms caused by a cry for help. (Id.) He noted that anxiety, irritability, tension, and depression were evident and that Plaintiff's emotions were probably over controlled. (Id.) Dr. Weiss found no difficulty in attention, concentration or memory. (R. 311.) He

---

[24] This refers to an abnormal condition marked by the presence of concretions or calculi (i.e., stones) in the kidney or kidneys. See 4-N Attorneys' Dictionary of Medicine 1224.

noted that Plaintiff was able to perform five serial instructions without error and acceptably perform mental calculations.  (Id.)  Dr. Weiss further noted that Plaintiff was fully oriented to time, place and person, that she could correctly respond to six of out six questions in a simple story format, and that she could remember two of four words after a ten minute interval.  (Id.)  Dr. Weiss also noted that Plaintiff's insight and judgment were within normal limits but were reflective of low energy for problem solving.  (Id.)  Dr. Weiss diagnosed Plaintiff with "Major Depression, Recurrent, Severe" and "Rule Out Mood Disorder Due To General Medical Condition."  (Id.)

Dr. Weiss also completed a Medical Source Statement Of Ability To Do Work-Related Activities (Mental.) (R. 312-13.)   While Dr. Weiss opined that Plaintiff would have no limitations in her ability to understand, remember and carry out short, simple instructions, he noted that he "cannot evaluate" the other eight categories of mental activities enumerated on the form.   (Id.)  Dr. Weiss noted that Plaintiff's "medical conditions, as documented, may affect mood in all settings" and that her "interview behavior was quite tearful." (R. 313.)

On November 18, 2003, at the request of the State agency, Plaintiff underwent a consultative medical evaluation with Ghiath Mahmaljy, M.D. (R. 314-16.)  Based on Plaintiff's records and her physical examination, Dr. Mahmaljy's impression was that Plaintiff had SLE with arthralgias and evidence of synovitis in the hands; history of bronchial asthma; irritable bowel syndrome; history of nephrolithiasis; general fatigue, could be related to the lupus, but might also be due to depression; and hypertension. (R. 315-16.)

At the June 18, 2004 hearing, Plaintiff testified that as a result of lupus she has pain, skin rashes, and problems with her kidneys. (R. 382.) She reported pain in most of her joints, as well as her hands, writs, back, hips and legs with the worst pain in her back and hips. Plaintiff testified that she has daily episodes of severe nausea, stomach aches, diarrhea and cramping due to her IBS. (R. 383.) Plaintiff also reported severe fatigue all of the time and trouble falling asleep. (R. 384.) With respect to depression, Plaintiff testified that she has "no desire to mess with anything" and that she just wants to be left alone so that she can sleep. (Id.) Plaintiff testified that according to her husband she cries constantly. (R. 385.) She noted that she has never been prescribed anti-depressants. (Id., 398.)  Plaintiff testified that she could probably lift a bag of groceries, and walk or sit for fifteen to twenty minutes. (R. 389-90.) Plaintiff testified that on a typical day she would wake her children and make sure they got on the school bus and then go back to bed until she let them back into the house after school. (R. 385.) She further testified that her children and husband perform most of the chores (R. 386, 390, 392) and that if her children need her or want to talk to her, they come to her room. (R. 395-96.)

There are two physical residual function capacity ("RFC") assessment of record which were performed by non-examining state agency physicians. Eric C. Puestow, M.D. performed an assessment on January 22, 2002. (R. 232-39) and Reuben E. Brigety, M.D. performed a second assessment on April 22, 2002. (R. 301-08.) Based on their review of the medical records, Puestow and Brigety concluded that Plaintiff could frequently lift/carry up to 10 pounds, occasionally lift/carry up to 20 pounds, walk/stand or sit for about six hours of an 8-hour workday, and push and/or pull without

9

limitation. (R. 233, 302.) Puestow further found that Plaintiff could occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl but that she should never climb ladder/rope/scaffolds and that she should avoid concentrated exposure to extreme cold and heat, wetness, humidity, vibration, fumes and hazards. (R. 234, 236.) Brigety generally agreed with these postural limitations but concluded that Plaintiff could climb ladder/rope/scaffolds occasionally and balance frequently and that she should avoid concentrated exposure to fumes and hazards. (R. 303-05.)

The ALJ determined that claimant suffers from systemic lupus erythematosus, renal insufficiency, thyroid disease, a history of irritable bowel syndrome and a history of hypertension. (R. 19.) The ALJ found that Plaintiff's depression was not a severe mental impairment, and that her impairment was primarily physical. (Id.) In reaching this conclusion, the ALJ relied on the opinion of Dr. Weiss and Plaintiff's testimony regarding her activities of daily living. (Id.) The ALJ determined that, while these impairments were severe, Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (*Id.*) The ALJ then determined that Plaintiff retained the physical RFC for light work. (R. 22.) The ALJ found that Plaintiff could not perform her past relevant work. (R. 21-22.) The ALJ then applied the grids and found that Plaintiff was not disabled. (Id.)

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to properly evaluate whether her depression was a severe mental impairment at the second step of the sequential disability determination.[25] At the second step, the ALJ must "consider the medical severity of [the claimant's] impairments."[26] In doing so, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."[27] This is a threshold inquiry and only claims based on the most trivial impairments are rejected.[28] "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."[29] A diagnosis is insufficient; instead, Plaintiff must show the effect of the impairment on her ability to work.[30]

Here, the ALJ concluded that Plaintiff's alleged depression has

> imposed no more than mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace with no repeated episodes of deterioration. Therefore, the undersigned finds that the claimant does not have a severe mental impairment and that her impairment is primarily physical.

---

[25] Plaintiff also argues that the Commissioner failed to fully and adequately consider the full range of the Plaintiff's impairments in determining her ability to perform substantial gainful activity; that the Commissioner improperly applied the grids; and that the Commissioner failed to fully and adequately develop and weigh the evidence in this matter. However, based on the Court's finding that the ALJ erred at the second step, the Court need not consider these additional arguments.

[26] See Wind v. Barnhart, 133 Fed.Appx. 684, 690 (11th Cir. 2005)(quoting Phillips v. Barnhart, 357 F.3d. 1232, 1237 (11th Cir. 2004).

[27] See id.

[28] See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986).

[29] Id.

[30] See Wind, 133 Fed.Appx. at 690 (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

(R. 19.)

In reaching this conclusion, the ALJ misconstrued Dr. Weiss' diagnosis -- i.e.,"Major Depression, Recurrent, Severe; Rule Out Mood Disorder Due To General Medical Condition." The ALJ noted that "[a]lthough Dr. Weiss reported that she had major depression, he ruled out a mood disorder due to her general medical condition." (R. 19.) However, "rule out mood disorder" does not mean that a mood disorder is not present; rather, it means that Plaintiff's condition requires further investigation. Moreover, Dr. Weiss' consultative evaluation was incomplete. Dr. Weiss was only able to evaluate the impact that Plaintiff's mental impairments would have on two out of ten categories of work-related mental activities (i.e., Plaintiff's ability to understand, remember and carry out short, simple instructions). Dr. Weiss was not able to evaluate what impact Plaintiff's mental impairments would have on her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) make judgements on simple work-related decisions; (4) interact appropriately with the public; (5) interact appropriately with supervisors; (6) interact appropriately with co-workers; (7) respond appropriately to work pressures in a usual work setting; and (8) respond appropriately to changes in a routine work setting.[31]

The ALJ also relied on Plaintiff's testimony that "she tries to take care of her family the best that she can" and that she "takes care of two children ages 13 and 10." (R. 19.) As an initial matter, this vague and general testimony does not establish that

---

[31] Pursuant to 20 CFR §404.1519p(b), if a consultative report is inadequate or incomplete, the Commissioner will contact the medical source who performed the consultative examination, give an explanation of the evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report.

Plaintiff's depression is not severe. Moreover, by Plaintiff's own testimony, taking care of her children included waking them and making sure they got on the school bus and then letting them back into the house after school. (R. 385.) She further testified that her children and husband perform most of the chores (R. 386, 390, 392) and that if her children wanted to talk to her, they had to come to her. (R. 395-96.)

As such, the ALJ's conclusion that Plaintiff does not have a severe mental impairment was not supported by substantial evidence. On remand, the ALJ should reexamine whether Plaintiff's depression is a severe impairment and reconsider what impact Plaintiff's depression would have on her ability to work.

## V. CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to: (1) reconsider whether Plaintiff's depression is a severe impairment; (2) properly consider what impact Plaintiff's depression would have on her ability to work; and (3) conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on March 24, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
　　All Counsel